RESIDENTS OF PLATT NATIONAL PARK — RIGHT TO VOTE Residents of Platt National Park who meet the requirements of Article III, Section 1 Oklahoma Constitution, and who are properly registered to vote in their respective precincts, are entitled to exercise their right to vote in all appropriate elections. The Attorney General has had under consideration your letter in which you, in effect, ask the following question: Are persons who reside in Platt National Park and who are otherwise qualified under Article III, Section 1 Oklahoma Constitution, entitled to vote in elections in Oklahoma? You note in your letter that this office in a letter addressed to Senator George Miller on February 15, 1965, stated that the employees residing at Platt National Park can not vote in state elections. The reason given was that Platt National Park had originally been in Indian Territory and had never been ceded to Oklahoma. According to Article III, 1, Oklahoma Constitution, those park residents were not Oklahoma citizens. You bring to our attention the recent Supreme Court decision of Evans v. Cornman, 398 U.S. 419,90 S.Ct. 1752, 26 L.Ed.2d 370 (1970). Article III, Section 1
Oklahoma Constitution, states as follows: "Qualified electors of this State shall be citizens of the United States, citizens of the State, including persons of Indian descent (native of the United States), who are over the age of 21 years and who have resided in the State at least six months, in the county two months, and in the election precinct 20 days next preceding the election at which such elector offers to vote. No person shall be a qualified elector of this State who is adjudged guilty of a felony, who is detained in a penal or correctional institution, who is a patient in an institution for mental retardation, or who has been committed, by judicial order, to an institution for mental illness." (Emphasis added) A strict reading of Article III, Section 1 supra, would prevent residents of Platt National Park from becoming qualified electors in the State of Oklahoma, even though they were over 21 years of age and had resided within Platt National Park for the time required of electors in the State. Our examination of the question cannot, however, stop there. Article III, 1, Oklahoma Constitution, must be construed in a manner consistent with the equal protection clause of the fourteenth amendment to the United States Constitution. In Evans v. Cornman, supra, the United States Supreme Court reviewed the decision of a three judge panel which had enjoined registration officials in Montgomery County, Maryland, from removing certain persons from the county's voter rolls. The persons removed from the voter rolls were residents of National Institutes of Health, a federal reservation or enclave located within the geographical boundaries of Montgomery County. Persons living in the enclave, according to the permanent board of registry of Montgomery County, did not meet the residency requirement of, Article I, 1, of the Maryland Constitution. The Supreme Court affirmed the decision of the three judge panel holding that since, in nearly every election, the plaintiffs had a stake equal to that of other Maryland residents, they were entitled under thefourteenth amendment to protect that stake by exercising the equal right to vote. Evans v. Cornman, supra, is to some extent distinguishable from the situation involving Platt National Park. Platt appears to be unique among national parks, in that it is the only such park which was in existence before the territory surrounding it became a state. As far as we can ascertain all other national parks were established on land ceded to the United States by the respective states. Likewise in Evans v. Cornman, supra the National Institutes of Health became a federal reservation in 1953, when the State of Maryland ceded jurisdiction over the property to the United States. We do not think that this factual distinction is important in determining the right of residents of Platt National Park to vote in state elections. The substance of the decision in Evans v. Cornman, supra, was that the citizen's link to his laws and government is his right to vote and before the right can be restricted, the purpose of the restriction and the assertedly overriding interest served by it must meet close constitutional scrutiny. Evans, supra, in substance says that where the citizen is primarily or substantially interested in or affected by electoral decisions, he has the right to have a voice in making it. In determining that National Institutes of Health residents had a primary and substantial interest in electoral decisions the Supreme Court in Evans v. Cornman, supra, said as follows: ". . . Further, appellees are as concerned with state spending and taxing decisions as other Maryland residents, for Congress has permitted the States to levy and collect their income, gasoline, sales, and use taxes — major source of state revenues — on federal enclaves. See4 U.S.C.A. 104 — 4 U.S.C.A. 110. State unemployment laws and workmen's compensation laws likewise apply to persons who live and work on federal areas. See 26 U.S.C.A. 3305(d); 40 U.S.C. § 290. Appellees are required to register their automobiles in Maryland and obtain drivers permits and license plates from the State; they are subject to the process and jurisdiction of state courts; they themselves can resort to those courts in divorce and child adoption proceedings; and they send their children to Maryland public schools. ". . . . "In their day-to-day affairs, residents of the NIH grounds are just as interested in and connected with electoral decisions as they were prior to 1953 when the area came under federal jurisdiction and as are their neighbors who live off the enclave. In nearly every election, federal, state, and local, for offices from the presidency to the school board, and on the entire variety of the other ballot propositions, appellees have a stake equal to that of other Maryland residents. As the District Court concluded, they are entitled under theFourteenth Amendment to protect that stake by exercising the equal right to vote." Residents of Platt National Park have essentially the same primary and substantial interest in the electoral decisions in Oklahoma as did the National Institutes of Health residents in Maryland. It is therefore the opinion of the Attorney General that your question be answered in the affirmative. Residents of Platt National Park who meet the requirements of ArticleIII, Section 1 Oklahoma Constitution, and who are properly registered to vote in their respective precincts, are entitled to exercise their right to vote in all appropriate elections. (W. J. MONROE)